UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x

UNITED STATES OF AMERICA


    -against-

KENNETH E. MAHAFFY, JR.,
TIMOTHY J. O'CONNELL,
DAVID G. GHYSELS, JR.,              <u>MEMORANDUM AND ORDER</u>
ROBERT F. MALIN,                   05-CR-613 (S-3) (ILG)
LINUS NWAIGWE,
MICHAEL A. PICONE, and
KEEVIN H. LEONARD,

                    Defendants.

-------------------------------------------------x

GLASSER, United States District Judge:

      Trial in this criminal action alleging conspiracy, securities fraud, and false

statements is scheduled to begin on Monday, March 19, 2007. The government has

moved <u>in limine</u> pursuant to Federal Rule of Evidence 404(b) ("Rule 404(b)") and the

Second Circuit's opinion in <u>United States v. Towne</u>, 870 F.2d 880 (2d Cir. 1989), <u>cert.</u>

<u>denied</u> 490 U.S. 1101 (1989), to admit evidence regarding several uncharged acts or

crimes of various defendants. For the reasons stated below, the government's motion is

granted in part, and decision is deferred to trial in part.

## **BACKGROUND**

      The forty-one count Superseding Indictment ("Sup. Ind.") alleges, in essence,

that the defendants cooperated in a fraudulent scheme whereby, between roughly

August 2002 and February 2004, defendants Mahaffy, O'Connell, and Ghysels (the

"Broker Defendants"), who during all or part of that time were employed as stock

brokers at Merrill Lynch, Citigroup (a.k.a. "Smith Barney"), and Lehman Brothers, conspired to provide material inside information regarding those institutions' upcoming securities transactions to day traders at A. B. Watley, Inc., who were under the supervision of defendants Malin, Nwaigwe, Picone, and Leonard (the "A. B. Watley Defendants") and the former CEO of A. B. Watley ("CW-1"), who is now a cooperating witness for the government, for the purpose of enabling the day traders to engage in a fraudulent "front-running" scheme[1] whereby the traders exploited their knowledge of those upcoming institutional transactions so as to profit by the movements in stock prices caused by those transactions. The Broker Defendants allegedly conveyed this information by permitting A. B. Watley's day traders to listen, via an open telephone line, to the Broker Defendants' internal "squawk boxes"[2] for significant portions of the trading day. The A. B. Watley Defendants allegedly compensated the Broker Defendants by executing a series of "wash trades"[3] with the Broker Defendants "solely as a means of

---

[1]    The Superseding Indictment explains that "[a]mong other circumstances, front-running occurs when a stock trader:  (a) improperly obtains material, non-public information from a brokerage firm concerning large orders to purchase or sell securities, which have been placed with the brokerage firm by its institutional customers but have not yet been executed; and (b) subsequently executes trades in the same securities, prior to the execution of the larger customer orders, in anticipation of the movement in price that the large trades are likely to cause."  Sup. Ind. ¶ 15.

[2]    The Superseding Indictment states that "squawk boxes" are internal speaker systems that were located on each Broker Defendant's desk, and explains that "[t]he information that was broadcasted through the Squawk Boxes included material, non-public information concerning large orders to purchase and sell securities that had been placed with the Brokerage Firms by their institutional clients.  The large orders involved quantities of stock that were sufficiently large that the transactions could be expected to influence the market price for the stocks in question."  Id. ¶ 16.

[3]    The Superseding Indictment states that "[t]he 'wash trades' consisted of prearranged pairs of trades of the same securities between different accounts that the Day Traders maintained at various firms. . . .  Typically, the Day Traders executed the wash trades by simultaneously placing orders to:  (1) purchase a block of stock at a particular price through one Brokerage Firm account; and (2) sell a similarly sized block of the same stock at the same price through a different Brokerage Firm account.  The wash trades involved no net change in beneficial ownership of stock and had no legitimate investment purpose."  Id. ¶ 22.

generating commissions for [the Broker Defendants] in exchange for Squawk Box access." Id. The Superseding Indictment further alleges that, after the completion of the charged acts of conspiracy and securities fraud, defendants O'Connell, Mahaffy, Nwaigwe, and Picone made false statements to regulatory and law enforcement agents in an attempt to impede investigations by the United States Securities and Exchange Commission ("SEC"), the National Association of Securities Dealers ("NASD"), and the United States Attorney's Office into the charged securities fraud schemes and other alleged wrongdoing.

The government now seeks to introduce evidence of various uncharged acts of wrongdoing or false statements on the part of several defendants that it argues are admissible pursuant to Rule 404(b) and the case law of the Second Circuit. The Court shall discuss each item of evidence in greater detail below.

## DISCUSSION

Rule 404(b) states that evidence of uncharged crimes, wrongs, or acts "is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may be admitted for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. The Second Circuit has adopted an "inclusionary approach," whereby evidence of uncharged crimes or acts may "be admitted for any purpose other than to demonstrate criminal propensity." United States v. LaFlam, 369 F.3d 153, 156 (2d Cir. 2004); see also United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1993) ("when the other-act evidence is relevant to prove a material fact other than the defendant's propensity, it is not barred by Rule 404(b)."). The government "bears the

burden of demonstrating admissibility under Rule 404(b)." United States v. Cushing, No. S3 00-CR-1098, 2002 WL 1339101, at *2 (S.D.N.Y. June 18, 2002) (citing United States v. Nachamie, 101 F. Supp. 2d 134, 137 (S.D.N.Y. 2000)).

The process by which this Court must evaluate the government's proffered evidence is therefore

> well-established. First, the district court must determine if the evidence is offered for a proper purpose, one other than to prove the defendant's bad character or criminal propensity. If the evidence is offered for a proper purpose, the district court must next determine if the evidence is relevant to an issue in the case, and, if relevant, whether its probative value is substantially outweighed by the danger of unfair prejudice. Finally, upon request, the district court must give an appropriate limiting instruction to the jury.

United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir.1992) (citation omitted); see also Huddleston v. United States, 485 U.S. 681, 691 (1988). Evidence of acts not specifically charged in the indictment is also directly admissible, without reference to Rule 404(b), if the acts were taken in furtherance of a charged conspiracy, see Concepcion, 983 F.2d at 392 ("[a]n act that is alleged to have been done in furtherance of the alleged conspiracy, however, is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged"), or if the acts are "inextricably intertwined" with the crimes charged in the indictment and introduction of the evidence is therefore "necessary to complete the story of the crime on trial." Towne, 870 F.2d at 886.

As the Pitre court indicated, even if the evidence is proffered for a purpose other than to prove criminal propensity, and is therefore admissible under Rule 404(b), it may nevertheless be excluded pursuant to Federal Rule of Evidence 403 ("Rule 403"), which states that otherwise admissible evidence "may be excluded if its probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."[4] Evidence is "prejudicial" under Rule 403 not when it simply tends to prove that the defendant is guilty of the crimes charged, but "only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." United States v. Figueroa, 618 F.2d 934, 943 (2d Cir.1980). In other words, "the prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." United States v. Quattrone, 441 F.3d 153, 186 (2d Cir. 2006). The Second Circuit has held that evidence of other crimes or bad acts is generally admissible under Rule 403 where the uncharged acts "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged." United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990).

With these principles in mind, the Court shall examine each category of evidence pertaining to uncharged crimes or acts that the government seeks to introduce against the defendants at trial.

## 1.     The Wachovia Front-Running Scheme

The government seeks to introduce evidence that, between July 2002 and July

---

[4]     The Court shall not explicitly undertake a Rule 403 inquiry for every category of evidence that the government seeks to introduce, except where the admissibility of such evidence under Rule 403 is a close question. "[W]here the issues of both the probative value and possible prejudicial effect of admitting prior act evidence are presented to the district court when it makes its decision to admit such evidence, a mechanical recitation of the Rule 403 analysis is not required." Pitre, 960 F.2d at 1120. Except where otherwise stated below, the Court has determined that the evidence proffered by the government's motion in limine is admissible under Rule 403.

2003, defendants Malin and Leonard, together with CW-1 and others, conspired with a broker at Wachovia Securities ("Wachovia") to obtain access to Wachovia's squawk box for the purpose of engaging in a front-running scheme, and that, when the Wachovia broker was fired for participating in this uncharged conspiracy, "CW-1, Malin, Leonard and several other A. B. Watley employees had numerous conversations about the Wachovia broker's termination for improper use of the Squawk Boxes." Government's Motions In Limine ("Gov. Mem.") at 7. The government argues, first, that evidence of the Wachovia front-running scheme is admissible without reference to Rule 404(b) because it is "inextricably intertwined with the charged front-running scheme," and second, that even if Rule 404(b) applies, the evidence that the defendants were aware of the Wachovia broker's termination is admissible as evidence that the defendants were aware that A. B. Watley's receipt of squawk box information from the other brokerage firms described in the indictment was improper. Gov. Mem. at 7.

Neither Malin nor Leonard object to the introduction of this evidence; however, Malin requests that an instruction be issued at the time that this and other 404(b) evidence against him is elicited, instructing the jury that such evidence may be considered only for the limited purpose for which it is introduced, and not as a substitute for proof that the defendants committed the crimes charged in the indictment or as evidence of bad character or propensity. The Court must therefore determine whether evidence of the Wachovia front-running scheme constitutes 404(b) evidence such that a limiting instruction is appropriate, or is "inextricably intertwined" with the charged offenses, such that the evidence may be admitted without reference to Rule 404(b) and without a limiting instruction. United States v. Towne, 870 F.2d 880, 886

(2d Cir. 1989); see Fed. R. Evid. 105 (requiring the court to give a limiting instruction to the jury when evidence is admissible as to one party or for one purpose but not admissible as to another party or for another purpose).

In Towne, the Second Circuit affirmed the appellant's convictions on several counts of felony possession of a firearm, rejecting the appellant's argument that evidence demonstrating his possession and control of the firearms in question at times other than the single date alleged in the indictment constituted "other crimes" evidence inadmissible under Rule 404(b). The court held that "the challenged evidence was not 'other crimes' evidence within the meaning of Rule 404(b). . . . The continuous possession of the same gun does not amount to a series of crimes, but rather constitutes a single offense," and further noted that, in addition to evidence of a continuous offense charged in the indictment, evidence of uncharged criminal activity is admissible as direct evidence without regard to Rule 404(b) if it "'arose out of the same transaction or series of transactions as the charged offense, if it [is] inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial.'" Towne, 870 F.2d at 886 (quoting United States v. Weeks, 716 F.2d 830, 832 (11th Cir. 1983)) (emphasis and alterations in original). The government argues that evidence of the Wachovia front-running scheme is "inextricably intertwined" with the charged offenses, and therefore admissible for all purposes under the Towne analysis, "because all of this conduct involves a single course of criminal activity that occurred at the same general location, during the same general time frame, among essentially the same group of co-conspirators." Gov. Mem. at 7.

The Court rejects the government's view that this evidence is admissible under

7

Towne without reference to Rule 404(b).  Although the facts underlying the alleged

Wachovia scheme are, as the government points out, quite similar to the acts alleged in

the indictment regarding the defendants' use of squawk box information from Merrill

Lynch and Smith Barney, the Wachovia scheme was a separate, discrete offense that

may be conceptually segregated from the charged offenses without impairing the jury's

ability to understand the facts underlying the schemes alleged in the indictment.[5]  The

evidence is therefore admissible for the purposes, and subject to the limitations,

prescribed by Rule 404(b), but not for other purposes.  See United States v. Chen Xiang,

No. 02-CR-271, 2003 WL 21180400, at *3-4  (S.D.N.Y. May 20, 2003) (admitting

evidence pursuant to Rule 404(b) of uncharged crimes that were "remarkably similar" to

the indicted offenses).  Mr. Malin's request that a contemporaneous limiting instruction

be issued when this evidence is elicited at trial is therefore granted.[6]

---

[5]     The government also appears to suggest, as an independent basis for the admissibility of
this evidence under Towne, that knowledge of the Wachovia front-running scheme is necessary to
complete the story of the crime, because Wachovia was a contra party to some of the wash trades by which
the A. B. Watley Defendants allegedly compensated the Broker Defendants for squawk box access.  ("A
stock trader who participates in the other side of an order to buy or sell securities is known as the 'contra'
party.  Therefore, in the context of a stock sale, the 'contra' side is the buyer and in the context of a stock
purchase, the 'contra' side is the seller."  Gov. Mem. at 7 n. 3).  The Court fails to grasp why the fact that a
Wachovia broker was a participant in other front-running schemes is necessary to the jury's
understanding of the alleged use of wash trades as compensation for the Broker Defendants, particularly
since, by negative implication, some contra parties to the alleged wash trades were not co-participants
with the A. B. Watley Defendants in any front-running schemes.

[6]     Malin attached a proposed limiting instruction, adapted from Sand, Modern Federal Jury
Instructions 5-25–5-26, to his submission in response to the government's motions in limine.  The Court
will determine the precise wording of the limiting instruction at or shortly before trial.

**2.     Evidence of Uncharged Fraudulent Schemes in Which Malin, Leonard and Nwaigwe Participated with CW-1 at A. B. Watley**

The government moves to introduce evidence of three uncharged frauds allegedly perpetrated by CW-1 with the knowledge and participation of defendant Malin and, in one case, other A. B. Watley Defendants.  First, the government seeks to introduce evidence that between July 2002 and July 2003, CW-1 caused A. B. Watley's proprietary trading account to engage in several prearranged trades designed to embezzle money from A. B. Watley's account, to be transferred into  the account of an unindicted co-conspirator ("UC"), by arranging after-hours purchases of securities at above-market prices from the UC, who then kicked back approximately 30% of his profits to CW-1 and kept the remainder for himself, and that CW-1 paid Malin a cash bribe in exchange for Malin's agreement not to report the prearranged trades to A. B. Watley's management, public shareholders, or the criminal or regulatory authorities.  Second, the government moves to introduce evidence that on or about June 9, 2003, CW-1 and Malin conspired to transfer a loss of between $2 million and $3 million incurred by A. B. Watley's proprietary trading account into the account of an A. B. Watley customer, Dover Limited.  Finally, the government seeks to introduce evidence, that for an indeterminate period prior to the spring of 2003, CW-1, along with defendants Malin, Nwaigwe, Leonard, and other uncharged individuals, embezzled funds from an account under A. B. Watley's control to which all of A. B. Watley's day traders were required to contribute, ostensibly for the purpose of indemnifying A. B. Watley against trading losses.

The government argues that all of this evidence is admissible to show that a relationship of "criminal trust" developed between CW-1 and the A. B. Watley

Defendants while they worked at A. B. Watley, and also that it undermines any suggestion of a good-faith belief in the legality of their conduct that the defendants might put forth in their defense. The government contends that "the evidence tends to prove that the defendants participated with CW-1 in the charged front-running scheme not because they mistakenly believed such conduct to be legal, but because they trusted CW-1 sufficiently so that they were willing to engage in widespread misconduct together." Gov. Mem. at 13. Moreover, the government indicates that it expects defendants Malin and Nwaigwe to argue that the fact that they reported some of CW-1's illegal activities to the authorities demonstrates that they are innocent "whistle-blowers," rather than members of the front-running conspiracy. The government argues that the introduction of evidence of Malin's and Nwaigwe's participation in other illegal schemes with CW-1 is necessary to put their actions into proper context, and further intends to argue that Malin and Nwaigwe reported CW-1 to the authorities in an effort to shift investigators' attention away from themselves.

Mr. Malin does not object to the introduction of any of this evidence, but requests that the Court issue a limiting instruction at the time any such evidence is elicited, reminding the jury that this evidence may be considered only for legitimate 404(b) purposes and not as evidence of propensity or as a proxy for guilt. Mr. O'Connell does object to the introduction of this evidence, arguing that it is irrelevant to him and that he will suffer from the "spillover" prejudice inevitably caused by the A. B. Watley Defendants' alleged participation in these uncharged frauds. Finally, Mr. Nwaigwe objects only to the introduction of the embezzlement scheme in which he is alleged to have participated. Mr. Nwaigwe argues that because the embezzlement scheme

allegedly occurred contemporaneously with the charged securities fraud conspiracy, it is not relevant to the issue of the development or evolution of the A. B. Watley Defendants' relationship of criminal trust with CW-1, and that, if it is relevant, the probative value of the evidence is outweighed by its prejudicial effect.

The Court finds that it cannot adequately assess the relevance and the potential prejudicial effect of this evidence "without the necessary context that only trial can provide," and therefore defers resolution of these issues until trial, where the Court will be better able to assess the proffered evidence in the context of the other evidence presented and positions taken by the parties. United States v. Gotti, No. 02-CR-743, 2004 WL 2423799, at *6 (S.D.N.Y. Oct. 29, 2004).

### 3. Evidence that Mahaffy Sold Squawk Box Access to Other Traders

The government seeks to introduce evidence that, in addition to the day traders identified in the Superseding Indictment, and during the same time period alleged in the Superseding Indictment, Mr. Mahaffy also provided traders at several other institutions (collectively, the "Stock Traders") with access, via open telephone lines, to his squawk boxes at Merrill Lynch and Smith Barney throughout the trading day, and that several of the Stock Traders used information obtained from Mahaffy's squawk box to make profitable front-running trades. The Stock Traders allegedly opened brokerage accounts with Mahaffy and executed trades for the sole purpose of compensating Mahaffy for this access. The government argues that this evidence is admissible under two theories: first, as direct evidence of the two charges against Mahaffy of making false statements to federal agents in violation of 18 U.S.C. § 1001 ("§ 1001"); and second, as

Rule 404(b) evidence that Mahaffy knowingly and intentionally entered into agreements to trade squawk box access in exchange for wash trade commissions, rather than accidentally allowing some day traders to overhear squawk box information through a phone line kept open for other reasons.  With respect to the § 1001 charges, the government explains that, during proffer sessions in March and April 2005, "Mahaffy falsely told the government that, while he maintained open telephone lines at Merrill and Smith Barney for the purpose of communicating with his clients, he never intentionally used those telephone lines to allow his clients to listen to his firms' Squawk Boxes."  Gov. Mem. at 16.  The government alleges that evidence of Mahaffy's arrangements with the Stock Traders is admissible as direct evidence which "establish[es] the falsity of this claim."  Id.

Mr. Mahaffy objects to the introduction of evidence of his alleged dealings with the Stock Traders, and challenges both grounds upon which the government seeks to introduce the evidence.  The legal basis of Mr. Mahaffy's objection is not entirely clear from his submission, but he apparently challenges the relevance of the proffered evidence to the charges against him, arguing that his "admitted and legal" acts of providing squawk box information to the Stock Traders is not inconsistent with the statements he made to the government, and therefore is not evidence of the false statement charge against him.  Letter from Stephen P. Scaring, on Behalf of Kenneth Mahaffy, dated February 13, 2007 ("Mahaffy Mem.") at 2.  In its reply brief, the government elaborates on the admissibility of this evidence in support of the § 1001 charges, explaining that

[t]he evidence will establish two basic facts.  First, that Mahaffy explicitly

agreed to allow the Stock Traders to listen to his Squawk Boxes in exchange for brokerage commissions. Second, that the Stock Traders were able to hear the boxes through Mahaffy's open telephone line clearly and consistently enough to regularly engage in front-running. These facts lead to the obvious conclusion that, contrary to his proffer statements, Mahaffy did in fact place his telephone in close proximity to his Squawk Boxes for lengthy portions of the trading day. The evidence also strongly suggests that Mahaffy's claim that he usually kept the open telephone line in his Smith Barney office on mute was [a] complete fabrication.

Government's Reply in Further Support of its <u>In Limine</u> Motion and Response to Defendants' Renewed Severance Motion ("Reply Mem.") at 15.

The Court is satisfied that this evidence is admissible as direct evidence of Mahaffy's guilt as to the § 1001 charges. Mahaffy's objection on relevance grounds is nothing more than a difference of opinion as to how the evidence is best interpreted with respect to the factual issues underlying the question of Mahaffy's guilt. Because a reasonable jury could find that the fact that Mahaffy entered into arrangements for squawk box access with a group of Stock Traders in addition to the day traders named in the Superseding Indictment is a fact which has "any tendency" to make the government's accusations that Mahaffy intentionally lied during his proffer sessions "more probable. . . than it would be without the evidence," this evidence is relevant and admissible for that purpose. Federal Rule of Evidence 401. Mr. Mahaffy will have the opportunity at trial to challenge the government's characterization of this evidence, and to argue that it does not establish that he knowingly misled government officials at his proffer sessions. <u>See</u> <u>Germosen</u>, 139 F.2d at 128 (The fact that the defendant disputed the significance of the evidence at issue did not render it inadmissible because "[the defendant] was entitled to present his interpretation of the evidence. . . to the jury.").

This evidence is also admissible as Rule 404(b) evidence of intent, and of the

absence of mistake or accident, as to the other charges against Mahaffy. It is well-settled that "[w]here intent to commit the crime charged is clearly at issue, evidence of prior similar acts may be introduced to prove that intent." United States v. Caputo, 808 F.2d 963, 968 (2d Cir. 1987).[7] Mr. Mahaffy has placed his intent to facilitate front-running directly at issue in this case, and evidence that he was engaged in arrangements similar or identical to those charged in the Superseding Indictment is admissible to show that his actions were intentional and not accidental.

**4.    Evidence that Mahaffy, O'Connell, and Ghysels Engaged in an Earlier Squawk-Box-Based Front-Running Scheme with CW-1, Prior to CW-1 Joining A. B. Watley**

The government seeks to introduce evidence that defendants Mahaffy, O'Connell, and Ghysels first began providing CW-1 with access to their squawk boxes at Merrill Lynch and Lehman Brothers between July 2001 and December 2001, when CW-1 was employed as a trader at a hedge fund called Momentum Capital LLC ("Momentum"). The government further seeks to introduce evidence that, during the time that CW-1 was employed at Momentum, CW-1 had several conversations with Ghysels, Mahaffy, and O'Connell, in which CW-1 made reference to the fact that CW-1 was front-running on the basis of customer order information that CW-1 obtained through the squawk boxes. The government argues that this evidence is admissible under Towne without reference to Rule 404(b), or, in the alternative, admissible pursuant to Rule 404(b).

No defendant has objected to the admission of this evidence, so the government's motion will be granted with respect to it. Moreover, while no request for a limiting

---

[7]    The Caputo court also noted that "[t]he government may introduce such evidence during its case-in-chief, rather than waiting until the conclusion of the defendant's case, as long as it is apparent that intent will be in dispute." Id.

instruction has been made, the Court notes its determination that this evidence is admissible for all purposes under <u>Towne</u>, and without regard to Rule 404(b). Like <u>Towne</u>, in which evidence of the appellant's possession and control of firearms on dates other than that alleged in the indictment constituted evidence of a single continuing offense, the continuation of the same fraudulent scheme that the government seeks to introduce in this case, involving the same parties and the same practices at a different time and place than that charged in the indictment, is part of the offense charged, or at least inextricably intertwined with it and necessary to complete the story of the alleged fraudulent activities undertaken by CW-1 and the defendants against whom the government seeks to introduce this evidence, and is therefore not properly considered a separate crime under Rule 404(b).

**5.     Evidence of Uncharged Efforts to Obstruct Justice by O'Connell, Picone, and Leonard**

**a.     Alleged Additional Obstruction by O'Connell**

The government seeks to introduce evidence that, in addition to falsely stating to members of Merrill Lynch's internal compliance staff that he had never allowed day traders at Millennium to listen to Merrill Lynch's squawk box, as alleged in the indictment, Mr. O'Connell also instructed a manager at Millennium ("CW-2"), who is now a cooperating witness for the government, not to tell the NASD that Millennium's traders were front-running but, instead, to falsely claim that Millennium's traders were taking the contra side of orders that were disseminated through Merrill Lynch's squawk box. The government also seeks to introduce evidence that Mr. O'Connell instructed an administrative employee at Merrill Lynch to delete records from internal computer

systems which would have revealed that Mr. O'Connell had been assigned certain telephone lines which were used to provide information to the day traders. Because Mr. O'Connell does not object to the admission of this evidence, the government's motion <u>in limine</u> to admit this evidence is granted.

### b. Alleged False Statements by Picone

Mr. Picone, along with all of the other defendants, is charged with conspiracy to commit securities fraud and with mail fraud; he is also charged with violations of 18 U.S.C. § 1001 for allegedly making false statements to the SEC during an interview on July 20, 2005, regarding his participation in those offenses. The government moves to introduce evidence of another uncharged, allegedly false statement made during the same interview; specifically, that Mr. Picone "falsely testified that he had no knowledge of A. B. Watley day traders obtaining access to a Squawk Box after CW-1, A. B. Watley's former CEO, ceased to be employed by the firm," when Mr. Picone had personally facilitated the payment of cash bribes to a Merrill Lynch broker in exchange for squawk box access between September 2003 and February 2004. Gov. Mem. at 21. The government "seeks to admit evidence of Picone's uncharged false statement to prove his consciousness of guilt in relation to the securities fraud charges against him." Reply Mem. at 17.

Mr. Picone objects to the government's request, arguing that evidence of the uncharged false statement is inadmissible propensity evidence, and that its probative value is outweighed by the risk of unfair prejudice. Mr. Picone's objection relies primarily on <u>United States v. Cushing</u>, 00-CR-1098, 2002 WL 1339101 (S.D.N.Y. June 18, 2002), the significance of which was debated at length in the government's reply

16

brief and at oral argument.  In <u>Cushing</u>, which involved the prosecution of a former corporate CEO for securities fraud, perjury, and obstruction of justice, the district court held that evidence that the defendant had made a false statement to the NASD, years earlier, during testimony pertaining to a matter entirely unrelated to the prosecution at bar, was inadmissible to show consciousness of guilt as to the allegedly false statements to the SEC upon which the perjury charge was based.  The court held that the evidence of the prior false statement was not relevant to the charges in the later prosecution, noting that "[w]hether Cushing lied previously makes it no more likely that he knew he made an untruthful statement to the SEC."  <u>Id.</u> at *3.  Mr. Picone's counsel, while conceding at oral argument that evidence of a false exculpatory statement is generally admissible as evidence of consciousness of guilt, interprets the <u>Cushing</u> opinion to mean that "in the context of an indictment that specifically charges perjury, the jury will use this proffered evidence essentially for the prohibited purpose of propensity."  Tr. at 34:24-35:2.  The government rejects this characterization of the case, and cites <u>United States v. Parness</u>, 503 F.2d 430, 438 (2d Cir. 1974), <u>cert. denied</u>, 419 U.S. 1105 (1975), for the proposition that "[i]t is axiomatic that exculpatory statements, when shown to be false, are circumstantial evidence of guilty consciousness and have independent probative force."

The Court is unpersuaded by Mr. Picone's expansive reading of <u>Cushing</u>, and notes, as an initial matter, that Mr. Picone's characterization of the purpose for which the government seeks to introduce this evidence is mistaken.  The government does not argue, as Mr. Picone suggests, that the evidence is admissible to show consciousness of guilt as to the charged false statements, but rather that Mr. Picone's effort to distance

himself from the squawk box scheme by means of a false exculpatory statement is evidence of his consciousness of guilt as to the securities fraud charge. Mr. Picone's argument that "the government is trying to show that Picone allegedly lied once to the SEC in order to demonstrate that Picone <u>knows</u> he lied to the SEC in those instances charged in the indictment," and that the uncharged statement is therefore inadmissible propensity evidence, rests on a mischaracterization of the purpose for which the government seeks to introduce this evidence, and is therefore unfounded. Letter from J. Bruce Maffeo, on Behalf of Michael Picone, dated February 16, 2007, at 7 (emphasis in original). In any event, <u>Cushing</u> did not hold, as Mr. Picone suggests, that evidence of an uncharged false statement is categorically inadmissible under Rule 404(b) or Rule 403 where the defendant is charged with perjury or false statements; the <u>Cushing</u> court simply held that the defendant's uncharged false statement in that case was not probative of the issue of fact for which the government sought to introduce it, and was therefore inadmissible under Federal Rule of Evidence 402, which states that "[e]vidence which is not relevant is inadmissible." <u>Cushing</u> did not alter the well-settled rule that evidence of a false exculpatory statement is admissible as evidence of consciousness of guilt. <u>See, e.g.</u>, <u>Parness</u>, 503 F.2d at 438; <u>Henry v. Poole</u>, 409 F.3d 48, 65 (2d Cir. 2005) (quoting <u>Parness</u>); <u>United States v. Gaskin</u>, 364 F.3d 438, 462 (2d Cir. 2004) (inference of criminal intent "was strengthened by Gaskin's post-arrest false exculpatory statement denying ownership or knowledge of the $16,000."); <u>United States v. Glenn</u>, 312 F.3d 58, 69 (2d Cir. 2002) (false exculpatory statements may constitute "circumstantial evidence of consciousness of guilt and may strengthen inferences supplied by other pieces of evidence."). The government's motion to admit evidence of

Mr. Picone's allegedly false statement denying knowledge of efforts by A. B. Watley day traders to obtain access to brokerage squawk boxes after CW-1's departure from A. B. Watley is therefore admissible under Rule 404(b) as evidence of Picone's consciousness of guilt with regard to the securities fraud charge.

  **c.  Alleged Attempted Witness Tampering and Intimidation by Leonard**

   The government seeks to introduce two categories of uncharged evidence of witness tampering and intimidation by defendant Leonard:  first, that between February 2004 and December 2005, Leonard regularly communicated with a former A. B. Watley day trader ("Jane Doe #1") regarding her participation in various proffer sessions and other communications with the government, and that Leonard became abusive and threatening when, in December 2005,  Jane Doe #1 informed Leonard that she did not wish to have any further discussions with him concerning her cooperation with the government; and second, that Leonard falsely told another former A. B. Watley day trader ("CW-3"), who is now a cooperating witness for the government, that an SEC attorney, with whom Leonard briefly met in May 2004, had given Leonard a "legal opinion" that A. B. Watley's use of the squawk boxes was proper.  Leonard does not object to the government's introduction of this evidence, and this portion of the government's motion <u>in limine</u> is therefore granted.

## **CONCLUSION**

For the foregoing reasons, the government's motion in limine to admit certain

evidence pursuant to Federal Rule of Evidence 404(b) is GRANTED in part, and

decision is DEFERRED in part.

SO ORDERED.

Dated:      Brooklyn, New York
            March 16, 2007

_____/s/_____

I. Leo Glasser
United States Senior District Judge

Copies of the foregoing order were electronically sent to:

Counsel for the Government

Michael Anthony Asaro, Esq.
Sean Patrick Casey, Esq.
Eric Ross Komitee, Esq.

Assistant United States Attorneys for the Eastern District of New York
156 Pierrepont Street, 6th Floor
Brooklyn, NY 11201

Counsel for the Defendants

**For Kenneth E. Mahaffy, Jr.:**

David Bernfeld, Esq.
600 Third Ave.
New York, NY

Stephen P. Scaring, Esq.
Stephen P. Scaring, P.C.
666 Old Country Road, Suite 501
Garden City, NY 11530

**For Timothy J. O'Connell:**

Mildred M. Whalen , Esq.
Federal Defenders of New York, Inc.
16 Court Street
Brooklyn, NY 11201-4859

**For David G. Ghysels, Jr.:**

Jeffrey C. Hoffman, Esq.
Hoffman Pollok LLP
260 Madison Avenue
22nd Floor
New York, NY 10016

**For Robert F. Malin**:

Roland G. Riopelle
Sercarz & Riopelle LLP
152 West 57th Street
24th Floor
New York, NY 10019

**For Linus N. Nwaigwe:**

Donna R. Newman, Esq.
121 West 27th Street
Suite 1103
New York, NY 10001

Peter E. Quijano, Esq.
381 Park Avenue South
Suite 701
New York, NY 10016

**For Michael A. Picone:**

J. Bruce Maffeo, Esq.
Meyer Suozzi English & Klein P.C.
1350 Broadway
POB 822
New York, NY 10018

Elizabeth Nicole Warin, Esq.
Law Office of Bruce Maffeo
233 Broadway
Suite 2701
New York, NY 10279

**For Keevin H. Leonard:**

Thomas F.X. Dunn, Esq.
7 Dey Street
Suite 1101
New York, NY 10007