UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x

UNITED STATES OF AMERICA

     -against-

KENNETH E. MAHAFFY, JR.,
TIMOTHY J. O'CONNELL,
DAVID G. GHYSELS, JR.,                 <u>MEMORANDUM AND ORDER</u>
ROBERT F. MALIN,                      05-CR-613 (S-3) (ILG)
LINUS NWAIGWE,
MICHAEL A. PICONE, and
KEEVIN H. LEONARD,

               Defendants.

-------------------------------------------------x

GLASSER, United States Senior District Judge:

## INTRODUCTION

       Trial in this criminal action alleging conspiracy, securities fraud, and false statements has been ongoing since March 19, 2007.  On April 6, 2007, the Government offered excerpts from testimony given by defendants Michael Picone and Linus Nwaigwe in their respective depositions conducted by the Securities and Exchange Commission ("SEC"), (respectively, the "Picone excerpts" and the "Nwaigwe excerpts"). Both defendants Picone and Nwaigwe are charged with conspiracy to commit securities fraud and making false statements.  <u>See</u> Superceding Indictment at ¶¶ 38, 57, 59, 61. The Picone excerpts were offered to support Count 41 of the Superceding Indictment, which specifies:  (1) defendant Picone falsely stated that he approved a $1,000 expense payment from A.B. Watley on or about November 2003, to provide a trader working at the firm, Keith Geller, with funds to bring a Merrill Lynch broker to an "adult

1

entertainment establishment," (2) defendant Picone falsely stated that he believed that the trader was "attempting to develop a business relationship with the broker that would allow A.B. Watley to obtain access to secondary securities offerings through Merrill Lynch," and (3) defendant Picone falsely stated that he did not believe these funds would be used to compensate the Merrill Lynch broker for providing A.B. Watley access to a squawk box at Merrill Lynch. Superceding Indictment ¶ 61. The Nwaigwe excerpts were offered to support Count 39 of the Superceding Indictment, which specifies: (1) defendant Nwaigwe falsely stated that the first time he ever heard the term "squawk box" was when he saw the term in a subpoena he received from the SEC, and (2) defendant Nwaigwe falsely stated that he never heard the term "box" in relation to proprietary trading at A.B. Watley.

Defendant Picone moved to supplement the excerpts offered by the Government pursuant to Fed. R. Evid. 106. Defendant Picone asserted that the additional excerpts should "'in fairness' be considered by the jury contemporaneously as [they] will serve to explain and place in context several key points at issue in this trial." Letter from J. Bruce Maffeo, dated March 19, 2007.

Defendant Nwaigwe moved to exclude the Government from introducing proposed excerpts from his testimony before the SEC on November 3, 2004. See GX 619. Nwaigwe asserted that his statements are (1) hearsay, and not admissible as admissions by a party opponent because they were not against his interests when he made the statements, (2) not relevant because they do not deal with any false statements he made to the SEC, and (3) are more prejudicial than probative under Rule Fed. R. Evid. 403.

The Court denied both motions from the bench.  This Memorandum and Order explains the Court's rulings with regard to both motions.

## DISCUSSION

Fed. R. Evid. 106 ("Rule 106"), also called the rule of completeness, states:

> [w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

The purpose of Rule 106 is to place into evidence any omitted statements that may be "necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, [and] to ensure fair and impartial understanding of the admitted portion."  United States v. Castro, 813 F.2d 571, 576 (2d Cir. 1987); see Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 170 (1988) (purpose of Rule 106 is to avoid giving a jury a "distorted and prejudicial impression" of the statement).

When the government seeks to introduce inculpatory admissions by a defendant, it must also admit any exculpatory remarks that are "part and parcel" of the same statement.  United States v. Hadddad, 10 F.3d 1252, 1258 (7th Cir. 1993).  In Rainey, the Supreme Court explained that where "misunderstanding or distortion can be averted only through presentation of another portion [of the document], the material required for completeness is *ipso facto* relevant and therefore admissible under Rules 401 and 402."  488 U.S. at 172 (ruling that district court's refusal to admit the proffered evidence to explain defendant's belief in an alternative theory of the case amounted to abuse of discretion).  A district court's ruling is reviewed under an abuse of discretion standard.  See United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999), vacated on other grounds,

196 F.3d 383 (2d Cir. 1999).

Though the goal of Rule 106 is to offer the jury a "complete" understanding of a defendant's statement, Rule 106 does not permit the unfettered admission of all omitted portions. There are several limitations that prevent the rule from becoming all encompassing under the rubric of "completeness." For instance, Rule 106 does not require "the admission of portions of a statement that are neither explanatory nor relevant to the admitted passages." Id. A court may also exclude any portion that consists largely of a defendant's "own self-serving statements, which, as offered by him, are inadmissible hearsay." Id.; see also Pheonix Assocs. III v. Stone, 60 F.3d 95, 103 (2d Cir. 1995) (explaining that Rule 106 "does not compel admission of otherwise inadmissible hearsay evidence" (quoting United States Football League v. Nat'l Football League, 842 F.2d 1335, 1375-76 (2d Cir. 1988))).

A court must also take into account competing interests, such as the rights of other parties who may be affected by the exculpatory statements. For instance, if the omitted exculpatory statement violates a co-defendant's Sixth Amendment rights pursuant to Bruton v. United States, 391 U.S. 123 (1968), the court may not permit the inclusion of the statement even if it is required to rebut the inculpatory statement as to the defendant and place it in its proper context. See Castro, 813 F.2d at 575 (allowing admission of inculpatory portion of defendant Castro's statement in joint trial, that "Castro knew where the cocaine was," but precluding the exculpatory part, that "Acosto . . . put the cocaine in the bag" due to Bruton implications for the co-defendant, Acosto).

### First Addition Offered by Defendant Picone

The Government read into the Record several lines of testimony pertaining to the

fact that defendant Picone was the chief operating officer ("COO") while he was at A.B. Watley from Dec. 2, 2002 until August 31, 2003, and that he worked in a consulting capacity with A.B. Watley thereafter. <u>See</u> GX 620 A at 65:1-4, GX 620 B at 70:12-19. The additional testimony Picone moved to admit is a recitation of his duties and functions at A.B. Watley. <u>See</u> Additions to GX 620 A and B at 65:7-14, 68:2-24. These statements highlight the fact that he was not involved in proprietary trading at any time while employed by A.B. Watley.

These statements will not be admitted as they are not necessary to supplement the two facts being offered by the Government, that defendant Picone's official title was COO while he worked at A.B. Watley, and that he served in a consulting capacity after he resigned. The additional statements offered by defendant Picone describe his involvement in an internal investigation into an unrelated embezzlement scheme and the role that Jay Amore, A.B. Watley's Chief Executive Officer, played in that scheme. Defendant Picone contended that these additional statements are necessary to explain why he resigned from A.B. Watley, and to explain that if he thought that the $1,000 payment was going to be improperly used, he would have reported such activity to the persons investigating the embezzlement scheme. <u>See</u> <u>id.</u> at 65:15-70:11. Offering these otherwise inadmissible hearsay statements to the jury is merely an attempt by defendant Picone to exculpate himself. These statements should not be admitted under Rule 106 because they are purely self-serving hearsay statements that are neither necessary to rebut any inferences offered by the Government, nor are they necessary to avoid juror confusion as to why defendant Picone resigned from A.B. Watley.

### <u>Second Addition Offered by Defendant Picone</u>

The Government also admitted testimony from defendant Picone's deposition wherein defendant Picone stated that he was unaware that Keith Geller needed to make "cash payments to brokers in order to obtain access to a squawk box." GX 620 O at 136:8-25. Defendant Picone moved to supplement GX 620 O with statements regarding the process by which bills from vendors were received and reviewed in order to explain to the jury that defendant Robert Malin was the ultimate decision-maker. Therefore, defendant Malin, and not Picone, would have had the final say with regards to any payments made to the Merrill Lynch broker. <u>See</u> Additions to GX 620 O at 73:6-75:10.

These statements will not be admitted because they are not necessary to complete the story of whether defendant Picone was aware of the cash payments to obtain the squawk boxes. Furthermore, the inference from defendant Picone's statements is that if someone was aware, it would have been Robert Malin. This statement offends the principles of <u>Bruton</u> with regards to co-defendant Malin.

### **Third Addition Offered by Defendant Picone**

The Government also admitted GX 620 C and GX 620 D, which include statements describing defendant Picone's relationship with Keith Geller and negotiations that took place with Millennium Brokerage, LLC ("Millennium") to obtain access to a squawk box, as well as the commissions that would be paid for such access. <u>See</u> GX 620 C at 84:3-85:24, GX 620 D at 89:7-90:3. Defendant Picone suggested that his testimony to the SEC from 85:25-89:6 is necessary to complete the story regarding the failed negotiations. In his deposition testimony, defendant Picone explained that he never thought the boxes would allow transmission of non-public information. Specifically, he stated, "I never thought for a minute that it was improper information. I

thought quite honestly that it was brokers offering up trades, solicitations to trade, either buy or sell with them. I thought it was news, I thought it was commentary. I never for a moment thought it was improper information." Addition to GX 620 C and D at 86:6-11. Defendant Picone continued to explain from 87:20-89:6 that he assumed that the information was the same information usually offered to preferred clients.

The Court finds that none of these statements are necessary to complete the story of the failed negotiations to obtain a squawk box. Rather, these statements are only being offered as self-serving, exculpatory hearsay, and therefore, they are inadmissible. See Jackson, supra.

### **Fourth Addition Offered by Defendant Picone**

The Government also read into the Record the statements contained in GX 620 E, which include defendant Picone's statements that he and the A.B. Watley traders viewed Amore's departure from A.B. Watley as problematic because Amore's loss meant that A.B. Watley would lose its access to preferred client information. See GX 620 E at 90:17-91:15. The purpose of admitting this information is so the jury will infer that, after Amore's departure, the traders needed to obtain another source of information. Defendant Picone sought to supplement this testimony with the statements he made to the SEC explaining the failure of the Millennium deal and its consequences, *i.e.*, that many of the A.B. Watley traders decided to leave the firm because they could not obtain squawk boxes. See Addition to GX 620 E at 91:17-93:22.

While this information is relevant to the statements contained in GX 620 E, it is not necessary to complete the story that A.B. Watley did in fact lose access to the information coming over the squawk boxes. Moreover, this portion of defendant

Picone's testimony includes statements that would inculpate co-defendant Linus Nwaigwe, A.B. Watley's compliance officer, because it tends to show that Nwaigwe was aware that the use of information disseminated from the squawk boxes was improper. Defendant Picone's testimony stated, in pertinent part:

> I walked over to our compliance office [Nwaigwe] because I was wondering what could be wrong in the transaction. I understood from a competitive standpoint but I just wanted to make sure it was all above board, explained the proposed arrangement with Millennium. I'm not sure if he knew before or after the call [with Millennium] and he said he thought it was gray, the arrangement was gray, another broker dealer would be providing one broker dealer or another broker dealer with information.

92:5-13. Because this testimony raises <u>Bruton</u> issues as to co-defendant Nwaigwe, it will not be admitted. <u>See</u> <u>Castro</u>, <u>supra</u>.

### **Fifth Addition Offered by Defendant Picone**

The Government also admitted GX 620 F, defendant Picone's testimony concerning specific statements he heard disseminated over the squawk box, to show that defendant Picone was aware of the kinds of information that was transmitted. <u>See</u> GX 620 F at 100:2-24. Specifically, the government offered defendant Picone's testimony that he heard, "quotes and people shouting, natural buyer and numbers, whether it be – I'm sure there were symbols, what they were looking to either buy or sell, share amount, price." <u>Id.</u> at 100:20-24.

Defendant Picone moved to supplement this testimony with statements regarding his observations of the traders while they were listening to the squawk boxes, and the ways in which they placed proprietary trades. <u>See</u> Addition to GX 620 F at 97:5-100:1, 100:25-101:24. However, because none of these statements are necessary to complete the story regarding the types of information he heard coming over the box, or to put

what he heard into context, they are not relevant to the jury's understanding of these issues, and will not be admitted.

Defendant Picone also sought to admit the statements that follow regarding whether he had conversations with any A.B. Watley traders about the use of the squawk boxes. See id. at 101:25-102:17. Defendant Picone stated,

> I understand now that it could have been front running or insider trading that's alleged. I didn't know that was going on and I certainly wouldn't have sat there and have allowed it to go on. So there could have been conversations but it wouldn't have stuck out, it didn't seem like a big deal at the time.

Id. at 102:11-17. None of these statements should be admitted because they are inadmissible hearsay, and defendant Picone's state of mind at the time of the proffer session with regard to the legality of the boxes is not relevant. Further, the statements are not necessary to supplement his testimony about the kinds of information he heard coming over the boxes.

### Sixth Addition Offered by Defendant Picone

The Government also admitted GX 620 H and GX 620 I, describing the allegedly false statements made by defendant Picone to the SEC, *i.e.*, that he thought that the true purpose of the expense report he approved for Keith Geller was to take a Merrill Lynch broker to a strip club, and that the purpose of the funds was not to obtain access to squawk boxes. See GX 620 H at 112:13-116:12, GX 620 I at 116:25-118:21. Defendant Picone sought to admit his testimony wherein he stated that co-defendant Robert Malin had check signing authority, and that defendant Picone did not give final approval for the expense report. See Addition to GX 620 H and I at 116:13-24, 118:22-119:14. These blame-shifting statements inculpate co-defendant Malin, and therefore, will not be

admitted.

### Defendant Linus Nwaigwe's Motion To Exclude His SEC Testimony

As a threshold matter, defendant Nwaigwe's statements are not hearsay because they are admissions by a party opponent. Contrary to the assertions made by defendant Nwaigwe, it is not necessary to prove that an admission by a party opponent was made against the interests of the speaker. Fed. R. Evid. 801(d)(2) and 804(b)(3) are not synonymous; admissions by a party opponent do not need to be against interest to qualify as non-hearsay under Fed. R. Evid 801(d)(2). See, e.g., 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 801.30[1] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2006) ("Unlike statements against interest under Rule 804(b)(3), party admissions need not have been against the party's interest when made."); Fed. R. Evid 804(b)(3) advisory committee's note (explaining that there is "no occasion to inquire whether [an admission by a party opponent] is against interest, this not being a condition precedent to admissibility of admissions by party opponents."). Therefore, any statements made by defendant Nwaigwe before the SEC are admissible as non-hearsay admissions by a party opponent regardless of whether he testified against his own interests.

The testimony offered by the Government is relevant to the issue of whether defendant Nwaigwe made false statements to the SEC about his cognizance of front-running activity at A.B. Watley and whether he had ever heard the term "squawk box" used there. In the testimony offered by the Government, the SEC asked defendant Nwaigwe, "Did any employee of Watley ever ask you a question about trading on non-public information?" and, "Did any employee at Watley ever ask you about the legality of

trading on information received over a box?" GX 619 at 3:5-9, 19-23. Defendant

Nwaigwe responded, "no," to both questions. Id. at 3:11-13, 3:25. Because his duty as

the compliance officer at A.B. Watley, as well as his awareness of any activity relating to

the squawk boxes, is at issue, these statements are relevant to whether or not defendant

Nwaigwe lied to the SEC. Additionally, defendant Nwaigwe's earlier statements in GX

619, that traders generally asked him questions "about the NASD rules or the

interpretation of the NASD rules," are admissible to provide context as to why the

traders might ask him specific questions relating to the boxes. Id. at 2:41-3:1; see Fed.

R. Evid. 106. Moreover, defendant Nwaigwe's statements do not appear to be

prejudicial under Fed. R. Evid 403. Therefore, the motion to preclude the Government

from introducing defendant Nwaigwe's testimony is denied.

## CONCLUSION

For the foregoing reasons, defendants Picone and Nwaigwe's motions are

DENIED.

SO ORDERED.

Dated:      Brooklyn, New York
           April, 9 2007

_____/s/_____

I. Leo Glasser
United States Senior District Judge

Copies of the foregoing memorandum and order were electronically sent to:

Counsel for the Government

Michael Anthony Asaro, Esq.
Sean Patrick Casey, Esq.
Eric Ross Komitee, Esq.

Assistant United States Attorneys for the Eastern District of New York
156 Pierrepont Street, 6th Floor
Brooklyn, NY 11201

<u>Counsel for the Defendants</u>

<u>For Kenneth E. Mahaffy, Jr.:</u>

David Bernfeld, Esq.
600 Third Ave.
New York, NY

Stephen P. Scaring, Esq.
Stephen P. Scaring, P.C.
666 Old Country Road, Suite 501
Garden City, NY 11530

<u>For Timothy J. O'Connell:</u>

Mildred M. Whalen, Esq.
Federal Defenders of New York, Inc.
16 Court Street
Brooklyn, NY 11201-4859

<u>For David G. Ghysels, Jr.:</u>

Jeffrey C. Hoffman, Esq.
Hoffman Pollok LLP
260 Madison Avenue, 22nd Floor
New York, NY 10016

<u>For Robert F. Malin:</u>

Roland G. Riopelle, Esq.
Sercarz & Riopelle LLP
152 West 57th Street, 24th Floor
New York, NY 10019

<u>For Linus N. Nwaigwe:</u>

Donna R. Newman, Esq.
121 West 27th Street, Suite 1103
New York, NY 10001

Peter E. Quijano, Esq.

381 Park Avenue South, Suite 701
New York, NY 10016

For Michael A. Picone:

J. Bruce Maffeo, Esq.
Meyer Suozzi English & Klein P.C.
1350 Broadway, POB 822
New York, NY 10018

Elizabeth Nicole Warin, Esq.
Law Office of Bruce Maffeo
233 Broadway, Suite 2701
New York, NY 10279

For Keevin H. Leonard:

Thomas F.X. Dunn, Esq.
7 Dey Street, Suite 1101
New York, NY 10007