UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x

UNITED STATES OF AMERICA

    -against-

KENNETH E. MAHAFFY, JR.,                    MEMORANDUM AND ORDER
TIMOTHY J. O'CONNELL,                        05-CR-613 (S-3) (ILG)
DAVID G. GHYSELS, JR.,
ROBERT F. MALIN,
LINUS NWAIGWE,
MICHAEL A. PICONE, and
KEEVIN H. LEONARD,

                 Defendants.

---------------------------------------------------x

GLASSER, United States Senior District Judge:

## INTRODUCTION

Trial in this criminal action alleging conspiracy, securities fraud, and false statements has been ongoing since March 19, 2007. On April 20, 2007, the Government moved to preclude defendants Mahaffy, Ghysels, and Nwaigwe from offering the testimony of certain expert witnesses they intend to call based on defendants' failure to abide by the disclosure requirements of Federal Rule of Criminal Procedure 16(b)(1)(C) ("Rule 16(b)(1)(C)") and the Court's Order, dated February 28, 2007 (Docket No. 204) (the "Pre-trial Order").[1]

Specifically, the Government argued that the defendants offered no more than

---

[1] During trial on April 23, 2007, counsel for defendant Nwaigwe informed the Court that she no longer planned on calling Mr. Edwards as a witness, and therefore, this Memorandum and Order will not address the adequacy of defendant Nwaigwe's disclosure statement.

1

the experts' curricula vitae and broad generalizations of the topics on which the experts would testify.  See Letter from S. Satwalekar to the Court, dated April 20, 2007, at 3-4.  The Government further maintained that, based on defendants' disclosures, all testimony from the experts would be cumulative of testimony already received by the Court, and any attempt to elicit testimony regarding "industry practice" with regards to squawk boxes would be irrelevant and prejudicial.  Id. at 5.  The Government also moved to preclude defendant Mahaffy from offering the testimony of his expert because his submission was untimely.[2]  Id. at 4.

Defendant Mahaffy stated in a letter addressed to the Government, dated March 19, 2007, the date on which the trial commenced, that expert Ronald S. Cohen's testimony would relate to "the mechanics of trading on the New York Stock Exchange.  Such testimony may include information regarding how buyers and sellers are matched, the role of the specialist in executing an order and other applicable rules and regulations relating to trading on the NYSE."  Defendant Mahaffy proffered that Mr. Cohen would "likely discuss the meanings of relevant terms, concepts and practices within the securities industry, including, but not limited to, day trading, trading volume, order flow, institutional trading, short selling, wash sales, and front-running.  He may also testify about the purpose of 'squawk boxes' within the industry."  Additionally the letter stated Mr. Cohen would also supply rebuttal testimony as to any expert witness called by the Government.

---

[2]  The Government originally moved for the expert testimony of all three witnesses to be precluded due to untimeliness.  However, the Government corrected itself at trial, commenting that both Ghysels and Nwaigwe complied with the Court's deadlines, and that it now only complained of defendant Mahaffy's non-compliance.

In a letter addressed to the Government on March 5, 2007, defendant Ghysels stated that expert Robert Hayden's testimony, offered on behalf of both defendants Ghysels and Mahaffy, would relate to "the nature and manner in which information is disseminated through 'squawk box' technology in connection with trading practices in the United States securities markets" and "information regarding trading activity of various securities markets disseminated both in these markets and outside those markets and the levels of access to information by various levels of customers." Additionally, the letter detailed that Mr. Hayden would "discuss the meaning of relevant terms, concepts, and practices in the use of 'squawk boxes' within the securities industry, including day trading, trading volume, liquidity, order flow, institutional trading, short selling, wash trades and front running. He may also testify about the effects of certain types of trading activity in connection with the use of 'squawk boxes,' as described in the Indictment on the market prices of securities, including the effects of trades as charged in the Indictment." Defendant Ghysels added that Mr. Hayden would also supply rebuttal testimony as to any expert witness called by the Government.

The Court ruled from the bench. This Memorandum and Order explains the Court's ruling.

## **DISCUSSION**

Rule 16(b)(1)(C) provides in pertinent part, "The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if - (1) the defendant requests disclosure under subdivision

(a)(1)(G) and the government complies . . . ."[3] Rule 16(b)(1)(C) mandates that the summary describe the "witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."

The purpose of Rule 16(b)(1)(C) is to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." United States v. Wilson, No. 04-CR-1016 (NGG), 2006 WL 3694550, at *2 (E.D.N.Y. Dec. 13, 2006) (quoting Fed. R. Crim. P. 16, Advisory Committee Notes, 1993 Amendment). The Advisory Committee Notes to the 1993 Amendment explain that the Rule is integral in distinguishing between lay and expert opinion that will be offered during trial. For instance, Rule 16(b)(1)(C) does not apply to witnesses who may offer only lay opinion testimony under Federal Rule of Evidence 701, or who may serve only as a summary witness under Federal Rule of Evidence 1006. See Fed. R. Crim. P. 16 Advisory Committee Notes, 1993 Amendment. The Rule is intended to "inform the requesting party whether the expert will be providing only background information on a particular issue or whether the witness will actually offer an opinion." Id.

It is well-settled that a court may in its discretion preclude expert examination pursuant to Rule 16(d)(2)(C) of the Federal Rules of Criminal Procedure regarding any

---

[3] Fed. R. Crim. P. 16(a)(1)(G) is the reciprocal discovery rule that applies to any proposed expert witness testimony offered by the Government. In this case, the Government timely complied with discovery, however, it ultimately decided not to call any expert witnesses during trial.

topics or opinions not properly disclosed.[4] See, e.g., United States v. Barile, 286 F.3d 749, 758-59 (4th Cir. 2002) ("Upon finding a violation of Rule 16, the district court has discretion under the Federal Rules of Criminal Procedure to determine the proper remedy. . . . Rule 16(d)(2) specifically allows the district court to prohibit the party [who does not comply with the discovery rules] from introducing evidence not disclosed." (quotation omitted) (alteration in original)); United States v. Jasper, No. 00 CR 825 (PKL), 2003 WL 223212, at *5 (S.D.N.Y. Jan. 31, 2003) (ordering defendant to produce a written summary of proposed expert testimony one week before trial because "defendant should be aware that the failure or delay in producing the written summary of an expert's testimony that defendant intends to use at trial has resulted in the preclusion of such evidence at trial."). A court may preclude the testimony as a whole, or any part that it determines was not properly disclosed to the Government. See Barile, 286 F.3d at 759 (allowing expert witness to testify on the "procedure, practice, and history of 510(k) submissions but not give his opinion regarding the materiality of the misrepresentations . . . [b]ecause [defendant] did not give a proper summary of [the expert's] opinion on materiality . . . [or] the bases and reasons for his opinions . . . ."). Even if the disclosure provides a sufficient summary of any opinions to be offered by the witness, it may be excluded if the defendant "has made no attempt at all to describe the bases and reasons for those opinions as required by [Rule 16(b)(1)(C)]." United States v. Wilson, 2006 WL 3694550, at *3 (quotation omitted).

---

[4] Defendant Mahaffy opines that because the Government's own expert disclosures lacked specificity, defendant Mahaffy should be excused for any insufficiency. Letter from M. Brissenden to the Court, dated April 22, 2007, at 2. Defendant Mahaffy was free to challenge the alleged deficiency of the Government's 16(a)(1)(G) statement which neither estopped the Government nor constituted a waiver of its right to invoke Rule 16(d)(2). It should be noted that the Government did not call any expert witnesses.

**Disclosure Statement Offered by Defendant Mahaffy**

Pursuant to the Pre-trial Order, defendants were required to provide the names of any expert witnesses they intended to call, as well as a summary of their testimony, at least ten days before trial. Additionally, defendants were required to provide any Rule 16(b) disclosure material within ten days of any such disclosure by the Government. The Order noticed that "[f]ailure to comply . . . shall result in preclusion from introducing evidence not disclosed." Pre-trial Order ¶ 3. All defendants complied with the deadline except for defendant Mahaffy, who waited until the day the trial commenced to produce the summary statement.

The Court will preclude defendant Mahaffy from presenting Mr. Cohen's expert testimony at trial due to his late submission. Failure to comply with deadlines set forth by a court is a "separate and independent basis for precluding [expert] testimony." Wilson, 2006 WL 3694550, at *3. Defendant Mahaffy's late submission is particularly egregious because he has been in possession of the Superseding Indictment for over a year, ample time to determine the topics upon which his expert would testify. See United States v. Petrie, 302 F.3d 1280, 1288 (11th Cir. 2002) (finding that district court properly excluded expert testimony "[a]s a sanction for . . . untimely disclosure" because defendant "waited until Friday afternoon prior to the commencement of trial on Monday . . . to disclose his expert to the government."); United States v. Foley, 111 Fed. Appx. 840, 840-41 (6th Cir. 2004) (finding that district court did not abuse its discretion in precluding expert testimony due to untimely and insufficient disclosure of summary statement pursuant to Rule 16(b)(1)(C)).

The lateness of the submission notwithstanding, the proposed testimony of Mr. Cohen would, in any event, be excluded by the Court for the reason that it provides neither "scientific, technical, or other specialized knowledge [which] will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid 702. The testimony would also be excluded because the disclosure statement only proffered general topics and did not describe any opinions that would be offered by the witness on these topics. See United States v. Concessi, 38 Fed. Appx. 866, 868 (4th Cir. 2002) (finding no abuse of discretion where the district court precluded expert testimony where "[t]he expert designations . . . included only the general topics concerning which each proposed expert would testify. The designations, however, failed to describe the witnesses['] opinions or provide the bases and reasons for the witnesses' opinions.").

Moreover, any testimony offered by Mr. Cohen would be entirely cumulative of testimony that has already been offered by a variety of witnesses over the past five weeks of trial. Other witnesses have already explained and defined "the meanings of relevant terms, concepts and practices within the securities industry, including, but not limited to, day trading, trading volume, order flow, institutional trading, short selling, wash sales, and front-running" and "the purpose of 'squawk boxes' within the industry."[5] The

---

[5] Any testimony relating to industry practice would be precluded nonetheless because it is entirely irrelevant and improper. Industry practice is not a permissible defense to fraud. The Supreme Court has long held that:

> Bankers, brokers, and others cannot, as was attempted in this case, establish by proof a usage or custom in dealing in such paper, which, in their own interest, contravenes the established commercial law. If they have been in the habit of disregarding that law, this does not relieve them from the consequences nor establish a different law.

Vermilye & Co. v. Adams Express Co., 88 U.S. 138, 146 (1874).

proposed testimony would not only be unhelpful to the trier of fact, but would be a "waste of time [and a] needless presentation of cumulative evidence." Fed. R. Evid. 403; see also Fed. R. Evid. 611.[6]

**Disclosure Statement Offered by Defendant Ghysels**

The 16(b)(1)(C) statement offered by defendant Ghysels, although timely, suffers from the same deficiencies as were ascribed to the "expert" testimony proposed by defendant Mahaffy, as discussed above. The testimony of Robert Hayden would not only be cumulative, needlessly time consuming, and provide no assistance to the trier of fact to understand the evidence and determine facts in issue, it would stumble on the threshold of relevance and serve to confuse and possibly mislead the jury. For example, the "nature and manner in which information is disseminated through 'squawk box' technology in connection with trading practices in the United States securities markets" is not only irrelevant in tending "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401, any probative value it could conceivably have would be "substantially outweighed by the danger of confusing the issues or misleading the jury." Fed. R. Evid 403.[7]

---

[6] For instance, witness Henry Mulholland, the managing director in charge of United States cash equity trading at Merrill Lynch, one of the firms at which defendant Mahaffy is alleged to have improperly used his squawk box, testified at length about the meanings of many related terms, including liquidity (Tr. at 2754:14-2758:13), institutional client (Tr. at 2756:14-17), trading by sales and position traders (Tr. at 2760:4-21, 2761:4-15, 2766:11-2767:3, 2765:12-2766:5, 2768:7-21), and the use of squawk boxes (Tr. at 2768:19-2780:16, 2781:16-2783:6).

[7] In a proffer supplementing the letter submitted by Ghysels' counsel, he stated that Mr. Hayden would testify that

as a trader for approximately 15 years in the same firm that Mr. Ghysels started off in and learned

8

The same deficiencies, relevance and danger of confusion, are suffered by the expert's being questioned about information regarding "trading activity of various securities markets disseminated both in these markets and outside those markets and the levels of access to information by various levels of customers." The only market relevant to this action is the New York Stock Exchange, and several witnesses have already testified about dissemination of information between traders on the New York Stock Exchange, as well as access to information by customers. A variety of witnesses have also discussed the use of squawk boxes to disseminate information at brokerage firms in order to facilitate the matching of orders to be placed on the New York Stock Exchange. Surely, any explanation by Mr. Hayden as to the meaning of the use of "squawk boxes within the securities industry" would be excruciatingly cumulative at this point in the trial.

## **CONCLUSION**

For the foregoing reasons, the Government's motion to preclude the expert testimony of defendant Mahaffy and Ghysels' expert witnesses is GRANTED.

SO ORDERED.

---

his craft, that he made a decision – when he made a decision to put something on the box knowing it was disseminated far and wide to various brokers who would be hearing it, that decision would only be made if he determined that the information no longer should be kept proprietary, because once it went out on the box it was opened to anyone and everyone to hear in various manner and, therefore, he would not let it go out and make that decision and push that button unless – unless he had made – come to the conclusion at that time that it no longer had to be proprietary information or material non-public information, as specific words go.

Tr. at 3893:6-18. This testimony does not touch upon whether defendant Ghysels knew that information disseminated over the squawk box at Lehman Brothers, the brokerage firm for which he worked, was confidential. Mr. Hayden has never worked at any of the brokerage firms involved in this action, and therefore, any testimony he would render regarding the use of squawk boxes at other firms would be irrelevant and highly prejudicial.

Dated: Brooklyn, New York
April 24, 2007

_____/s/_____
I. Leo Glasser
United States Senior District Judge

Copies of the foregoing memorandum and order were electronically sent to:

<u>Counsel for the Government</u>
Michael Anthony Asaro, Esq.
Sean Patrick Casey, Esq.
Eric Ross Komitee, Esq.

Assistant United States Attorneys for the Eastern District of New York
156 Pierrepont Street, 6th Floor
Brooklyn, NY 11201

<u>Counsel for the Defendants</u>

<u>For Kenneth E. Mahaffy, Jr.:</u>

David Bernfeld, Esq.
600 Third Ave.
New York, NY

Stephen P. Scaring, Esq.
Stephen P. Scaring, P.C.
666 Old Country Road, Suite 501
Garden City, NY 11530

<u>For Timothy J. O'Connell:</u>

Mildred M. Whalen, Esq.

Federal Defenders of New York, Inc.
16 Court Street
Brooklyn, NY 11201-4859

For David G. Ghysels, Jr.:

Jeffrey C. Hoffman, Esq.
Hoffman Pollok LLP
260 Madison Avenue, 22nd Floor
New York, NY 10016

For Robert F. Malin:

Roland G. Riopelle, Esq.
Sercarz & Riopelle LLP
152 West 57th Street, 24th Floor
New York, NY 10019

For Linus N. Nwaigwe:

Donna R. Newman, Esq.
121 West 27th Street, Suite 1103
New York, NY 10001

Peter E. Quijano, Esq.
381 Park Avenue South, Suite 701
New York, NY 10016

For Michael A. Picone:

J. Bruce Maffeo, Esq.
Meyer Suozzi English & Klein P.C.
1350 Broadway, POB 822

New York, NY 10018

Elizabeth Nicole Warin, Esq.
Law Office of Bruce Maffeo
233 Broadway, Suite 2701
New York, NY 10279

<u>For Keevin H. Leonard:</u>

Thomas F.X. Dunn, Esq.
7 Dey Street, Suite 1101
New York, NY 10007