UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
UNITED STATES OF AMERICA

    -against-

KENNETH E. MAHAFFY, JR.,
TIMOTHY J. O'CONNELL,
DAVID G. GHYSELS, JR.,
ROBERT F. MALIN,
LINUS NWAIGWE,
MICHAEL A. PICONE, and
KEEVIN H. LEONARD,

             Defendants.

---------------------------------------------------x

MEMORANDUM AND ORDER
05-CR-613 (S-3) (ILG)

GLASSER, United States District Judge:

Trial in this criminal action is presently ongoing. The government has moved in limine for an order precluding the defendants from pursuing certain avenues of cross-examination of its next witness, Postal Inspector Pankaj Sharma. For the reasons stated below, the government's motion is granted in part.

## BACKGROUND

Familiarity with the facts and circumstances underlying this case is herein presumed. See United States v. Mahaffy, No. 05-CR-613, 2007 WL 831800 (E.D.N.Y. March 16, 2007) (slip copy), for a general discussion of the underlying facts. When trial resumes on Monday, April 23, 2007, the government plans to call Inspector Sharma to testify about "(1) certain statements that defendant Timothy O'Connell made during a June 2004 telephone interview; (2) certain statements that defendant [Kenneth] Mahaffy made during proffer sessions in March and April 2005; and (3) certain

1

documents that were obtained during Inspector Sharma's investigation in this case." Letter from Michael A. Asaro, dated April 19, 2007 ("Gov. Mem."), at 1. The government notes that, as the Postal Service case agent during the government's investigation of the events underlying the indictment in this case, Inspector Sharma interviewed many individuals, including the government's cooperating witnesses Warren Fellus, Paul Coughlin, Irene Santiago, John Amore, and Keith Rogers. The government's letter indicates that it does not intend to question Inspector Sharma about his interviews with any of these cooperating witnesses during its direct examination, and seeks an order precluding the defendants from inquiring about any of Inspector Sharma's interviews with any of the government's cooperating witnesses during cross-examination. The government argues, first, that such inquiry is precluded under Fed. R. Evid. 611(b) ("Rule 611") because it is beyond the scope of the government's direct examination of Inspector Sharma, and second, that if the Court does permit the defendants to cross-examine Inspector Sharma about these interviews, they should not be permitted to elicit evidence of any statements made by those witnesses that are inconsistent with their testimony at trial, unless the proper foundation has been laid pursuant to Fed. R. Evid. 613(b) ("Rule 613").

## DISCUSSION

### I. The Court Shall Not Preclude Relevant Cross-Examination Pursuant to Rule 611.

In support of its argument that the Court should preclude any cross-examination of Inspector Sharma that goes beyond the scope of the testimony that the government elicits in its direct examination, the government quotes Rule 611(b) as stating that "[c]ross-examination should be limited to the subject matter of the direct examination

and matters affecting the credibility of the witness." Gov. Mem. at 2. Significantly, the government omits from its quotation the second sentence of Rule 611(b): "The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." The Second Circuit has recognized that "[t]he district court has broad discretion to determine the scope of cross-examination," United States v. Koskerides, 877 F.2d 1129, 1136 (2d Cir. 1989), and the court is not bound to strictly limit the scope of cross-examination of a witness where, in the exercise of that discretion, it finds that permitting opposing counsel to inquire into areas not addressed on direct is in the interests of justice.

This Court has previously indicated to counsel its general disinclination to preclude cross-examination into relevant issues simply on the ground that the cross-examination exceeds the scope of direct examination, and sees no reason to modify that approach in this instance. The conversations that Inspector Sharma had with the government's various witnesses about the allegations underlying the indictment in this case are clearly relevant, and to the extent that the defendants' inquiries into those conversations are not cumulative of evidence already presented and are not precluded by any other rule of evidence, the Court shall exercise its discretion under Rule 611(b) to permit the defendants to pursue those inquiries. In any event, sustaining an objection on Rule 611(b) grounds to such inquiries would be an empty formality, as the defendants could simply call Inspector Sharma as a hostile witness during their own case presentations to testify about any relevant issues that exceed the scope of the government's direct examination.

The one case that the government cites in support of its Rule 611 argument–

United States v. Bari, 750 F.2d 1169 (2d Cir. 1984)– offers no support whatsoever to any proposition relevant to the government's request; indeed, Bari does not even cite Rule 611. In Bari, the Second Circuit affirmed a district court's ruling precluding cross-examination of a government witness on the fact that, twelve years before trial, the witness had been hospitalized for paranoid schizophrenia for fifteen months, and had subsequently boasted to defense counsel that the hospitalization had been a ruse to evade prosecution. The Second Circuit summarized the district court as precluding cross-examination on the witness's hospitalization "on the grounds that the twelve year old episode was too remote, that there was other impeaching evidence available, that the digression into [the witness's] hospitalization would unnecessarily complicate the trial, and that the prejudicial effect of the evidence would outweigh its probative value." Id. at 1178. In other words, as the appellate court aptly noted, the district court's preclusion of the cross-examination was based on Fed. R. Evid. 403 ("Rule 403"), not Rule 611. In affirming the district court's ruling, the Second Circuit noted in passing the general proposition that "[t]he district court has broad discretion over the scope of cross-examination," id., but rested its decision specifically on Rule 403 grounds, holding that permitting the cross-examination "might well have been a time-wasting, confusing digression ultimately degenerating into a battle of psychiatric opinions. Moreover, his hospitalization had ended over ten years before and was of marginal relevance." Id. The Bari court further "fail[ed] to perceive any prejudice to the defendants resulting from" the omission of "this rather hoary psychiatric evidence." Id. Bari is therefore easily distinguishable from the present case. Aside from the fact that the Second Circuit's holding in Bari has nothing to do with Rule 611, the evidence precluded in that case was

4

far less relevant, and potentially more confusing and misleading, than the areas of cross-examination that the government seeks to preclude in this case.

The government further argues that, although the Court is generally reluctant to preclude otherwise relevant lines of cross-examination on the ground that they are outside the scope of direct, it should do so in this instance because any such cross-examination of Inspector Sharma would be cumulative with evidence already presented at trial. The Court is unable to make such a determination <u>a priori</u>, or at the categorical level at which the government seeks to preclude the anticipated cross-examination. Rather, it shall be necessary to evaluate individual objections to questions or lines of questions at the time they are posed to Inspector Sharma during his cross-examination. As has been its practice during the entire course of this trial, the Court shall sustain objections to questions by counsel that seek to elicit evidence that has already been presented to the jury.

## II. The Government's Motion to Preclude Cross-Examination of Inspector Sharma Pursuant to Rule 613 is Granted in Part.

Rule 613(b) provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Two defendants, Mahaffy and O'Connell, have indicated that they intend to cross-examine Inspector Sharma with respect to statements made to him by cooperating witnesses, and reflected in his notes of those witnesses' proffer sessions, that are allegedly inconsistent with their testimony at trial. Mr. Mahaffy intends to cross-examine Inspector Sharma regarding Inspector Sharma's interviews of Irene Santiago, Mr. Mahaffy's and Mr. O'Connell's former

assistant at Merrill Lynch, the notes of which Mr. Mahaffy maintains contain three statements materially inconsistent with Ms. Santiago's testimony at trial. First, Mr. Mahaffy argues that Ms. Santiago's statements at trial that she could not remember telling the government that she often witnessed Mr. Mahaffy working with his telephone on his shoulder, adding only after persistent questioning that she might have seen him put his telephone next to his squawk box, is inconsistent with Inspector Sharma's notes of Ms. Santiago's proffer session, which indicate that she did make such statements. See Tr. at 2127:13-20.[1] Second, Mr. Mahaffy argues that Inspector Sharma's notes belie Ms. Santiago's testimony at trial that she could not recall telling the government in a proffer session that she never put Mr. Mahaffy's squawk box next to his telephone for him, as she testified she had routinely done for Mr. O'Connell. See Tr. at 2145:9-12.[2] Finally, Mr. Mahaffy plans to cross-examine Inspector Sharma with respect to Ms. Santiago's statement at trial that she did not remember telling the government during her proffer session in November 2006 that she did not believe she had ever hung up Mr. Mahaffy's telephone when he had forgotten to do so before leaving the office, but that she might

---

[1]     Q: Does this refresh your recollection that when they asked you if you ever saw Ken Mahaffy put his phone next to his box, your first response was, He [sic] had his phone on his shoulder, and then after several other responses, you said maybe you saw that, referring to Ken Mahaffy having his phone next to the box [?] Do you remember that?

    A: I'm sorry, it doesn't.

    Q: It doesn't refresh your recollection?

    A: No.

[2]     Q: Do you remember telling that to the government during this proffer session, that you never put the box next to the phone for Mr. Mahaffy?

    A: It's possible. I just don't remember. I'm sorry.

have done so on occasion. See Tr. at 2148:6-2149:14.³ Mr. Mahaffy maintains that Inspector Sharma's notes reveal that Ms. Santiago did make such a statement to the government.

Mr. O'Connell plans to cross-examine Inspector Sharma regarding the his interviews with Warren Fellus, a former day trader at A. B. Watley and Millennium Securities ("Millennium"). Mr. Fellus testified at trial that, following an examination by the National Association of Securities Dealers ("NASD") of Millennium on November 25, 2003, he was instructed by Mr. O'Connell to tell the NASD that the voice coming over Millennium's squawk box was O'Connell's, that O'Connell was providing "technical call" information, not customer order flow, to Mr. Fellus at Millennium, and that Mr. Fellus provided Mr. O'Connell a daily list of stocks in which he was interested in purchasing should any of Merrill Lynch's institutional clients express a desire to sell any of those securties.⁴ See Tr. at 1558:19-1559:17. Mr. Fellus further testified at trial that

---

³  Q:   The question is, during a proffer session that you had with the government on November 27, '06, in response to a question regarding whether or not Ken Mahaffy would forget to hang up the box and you would call and— and he would call, do you remember telling them during that session that you did not think that happened, but it could have? Do you remember saying that?

A:   It's possible.

Q:   Take a look at this and see if it refreshes your recollection.

* * *

Q:   Does that refresh your recollection that your statement at the time that you spoke to the government in November of '06 was that you did not think this happened, but it could have?

A:   Maybe. I— it doesn't refresh my recollection. I'm sorry. But it's possible I could have said that. I don't remember. It was a long time. . . . I was very nervous. So I don't really remember. Could have been.

⁴  Mr. Fellus explained that a "technical call" is "when you buy or sell a stock based solely on the chart, the stock, the history of the stock." Tr. at 1559:21-22.

all of these statements were false, and that he was willing to lie at Mr. O'Connell's direction because "[he] was scared and [he] knew what [he] did was wrong." Tr. at 1560:15. On cross-examination, Mr. O'Connell's attorney asked Mr. Fellus whether it was true that, despite having attended "dozens" of proffer sessions during the years in which the government's investigation was ongoing, see Tr. at 1692:11-23, he had never informed the government that his false statements to the NASD were made at Mr. O'Connell's direction until December 20, 2006, to which Mr. Fellus responded that he did not recall if the December 20, 2006, meeting was the first at which he had disclosed that information to the government. See Tr. at 1695:18-22,[5] 1696:7-10.[6] On cross-examination of Inspector Sharma, Mr. O'Connell seeks to elicit testimony to the effect that, notwithstanding his statements at trial, Mr. Fellus did not inform the government that Timothy O'Connell allegedly directed him to lie to the NASD about the nature and content of squawk box communications at Millennium until December 20, 2006.[7]

The government moves to preclude any cross-examination of Inspector Sharma regarding prior statements of cooperating witnesses that are allegedly inconsistent with

---

[5]    Q:    [The December 20, 2006 proffer session] was also the first meeting where you told the Government that Mr. O'Connell told you to lie to the NASD, isn't that correct?

       A:    I don't believe it was.

[6]    Q:    Prior to that meeting, you hadn't told the Government that Tim O'Connell told you to lie at the NASD prior to December 20, 2006, isn't that correct?

       A:    Again, I don't remember.

[7]    Mr. O'Connell initially also sought to elicit testimony to show that Mr. Fellus also had not informed the government of his SEC testimony on November 25, 2003, until December 20, 2006. His counsel has subsequently withdrawn that request, however, so the Court need not address it.

8

their trial testimony, unless the foundational requirements of Rule 613 are satisfied.[8]
The Second Circuit has held that extrinsic evidence of a prior inconsistent statement may be introduced for the purpose of impeaching a witness's credibility only if "(1) the statement is inconsistent with the witness's trial testimony, (2) the witness is afforded an opportunity to deny or explain the same, and (3) the opposing party is afforded the opportunity to cross-examine the witness thereon," United States v. Strother, 49 F.3d 869, 874 (2d Cir. 1995), and has recognized that "the determination of whether statements are in fact inconsistent is committed to the sound discretion of the district court, and that 'statements need not be diametrically opposed to be inconsistent. . . .'" United States v. Agajanian, 852 F.2d 56, 58 (2d Cir. 1988) (quoting United States v. Jones, 808 F.2d 561, 568 (7th Cir. 1986)). The district court further enjoys substantial discretion with respect to extrinsic evidence of inconsistent statements, and is "not unequivocally bound to admit any or all extrinsic evidence of a prior inconsistent statement." United States v. Amato, No. 03-CR-1382, 2006 WL 1891113, at *3 (E.D.N.Y. June 27, 2006) (quoting United States v. Young, 248 F.3d 260, 268 (4th Cir. 2001)).

Applying these principles, the Court concludes that Mr. Mahaffy may cross-examine Inspector Sharma only with respect to the two issues for which Ms. Santiago neither affirmed nor denied the alleged inconsistent statement contained in the Inspector's notes, and only for the purpose of impeaching Ms. Santiago's memory. Mr.

---

[8] The government seems to be under the impression that enforcing Rule 613(b) against the defendants is equivalent to precluding their cross-examination with respect to Inspector Sharma's interviews with the government's cooperating witnesses in its entirety. It is possible that this will prove to be true in practice, but the Court, having not yet been informed with any specificity how the defendants intend to cross-examine Inspector Sharma about those interviews, is not prepared to hold that Rule 613(b) necessarily encompasses the entire scope of the defendants' potential cross-examination on these issues. It is quite conceivable that the defendants may wish to elicit testimony other than prior inconsistent statements of cooperating witnesses; Rule 613(b) would impose no obstacle to such cross-examination.

9

Mahaffy's intention to use Inspector Sharma's notes for the purpose of introducing Ms. Santiago's statement that she only saw Mr. Mahaffy working with his telephone on his shoulder, and not placing it near his squawk box– statements she unequivocally denied making at trial– is clearly inconsistent with the line of Second Circuit precedent that holds that "a 'third party's characterization' of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization.'"[9] United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992) (affirming district court's exclusion of Assistant United States Attorney's notes of debriefing session with Drug Enforcement Administration agent, where notes were shorthand characterizations of agent's statements and were not adopted or endorsed by agent).[10] "The burden of proving that notes reflect the witness's own words rather than the note-taker's characterization falls on the party seeking to introduce the notes." Almonte, 956 F.2d at 29 (citing Fed. R. Evid. 901(a)). The situation presented here is reminiscent of that addressed by the Second Circuit in United States v. Leonardi, 623 F.2d 746 (2d Cir.

---

[9] The rulings contained herein were issued from the bench prior to publication of this written order, and an instance from Inspector Sharma's testimony clearly illustrates the wisdom of the rule prohibiting the attribution of a third party's characterization of statements to a declarant who has not adopted or endorsed that characterization. During his redirect examination, Inspector Sharma testified on the basis of his notes that defendant O'Connell had admitted, during a proffer session in April 2005, to trying to "mislead" the government in June 2004. See Tr. at 3852:12-15. On re-cross, however, the Inspector conceded that he had no distinct recollection of Mr. O'Connell specifically using the word "mislead," and that it is possible that Mr. O'Connell simply acquiesced to Mr. Asaro's suggestion that he had been "trying to be cute" with the government in his earlier responses. Tr. at 3855:22. The significant distinction between intentional misleading and "trying to be cute" highlights the importance of the Almonte rule.

[10] See also Strother, 49 F.3d at 875 ("We have noted, as have other courts, that a third party's characterization of a witness's statement can constitute a prior statement of the witness where the witness has 'subscribed to that characterization.'" (quoting Almonte, 956 F.2d at 29) (citing United States v. Schoenborn, 4 F.3d 1424, 1426-29 & n. 3 (7th Cir. 1993); United States v. Saget, 991 F.2d 702, 710 (11th Cir. 1993)) ; Securities & Exch. Comm'n v. Treadway, 438 F. Supp. 2d 218, 223 (S.D.N.Y. 2006) (holding that the defendants could not introduce the SEC's notes of proffer sessions as evidence of the government witnesses' prior inconsistent statements "without first demonstrating that the notes are indeed actual prior statements by these witnesses.").

1980). In that case, the appellate court affirmed the district court's exclusion of an FBI agent's notes that the defendant attempted to offer into evidence as a prior inconsistent statement of the government's witness Samuel Ax. The court held that the FBI notes were not attributable to Ax because "[p]rior to his cross-examination, Ax had never seen the document, which had been created some five days after the interview and did not purport to memorialize all of Ax's statements," noting that "a witness may not be charged with a third party's characterization of his statements unless the witness has subscribed to them." Id. at 757. The identical situation is presented here, with Inspector Sharma in the role of the FBI agent and Ms. Santiago in the role of Mr. Ax. Ms. Santiago's clear statement that she did not remember making the statements in question even after reviewing Inspector Sharma's notes of the proffer session operates as a rejection of Mr. Mahaffy's invitation to adopt the statements contained in Inspector Sharma's notes; those statements therefore cannot be attributed to Ms. Santiago for the purpose of establishing the foundational requirements of Rule 613(b).[11] Mr. Mahaffy may, however, elicit testimony during Inspector Sharma's cross-examination regarding Ms. Santiago's statements that: 1) she never put Mr. Mahaffy's phone next to his squawk box; and 2) she did not believe that she had hung up Mr. Mahaffy's phone when he had forgotten to do so when leaving the office, but it could have happened. He may do so, however, only for the purpose of impeaching Ms. Santiago's memory regarding the events underlying the charges against Mr. Mahaffy. Ms. Santiago could neither confirm or deny having made these statements at trial, and Mr. Mahaffy is therefore entitled to

---

[11] Even if Inspector Sharma were to testify on the basis of his own recollection that his notes reflect the verbatim statements of Ms. Santiago, this obviously would be insufficient to establish adoption or endorsement by Ms. Santiago herself.

challenge her ability to recall these events by eliciting testimony about them from Inspector Sharma on cross-examination.

Likewise, Mr. O'Connell is clearly entitled to cross-examine Inspector Sharma regarding the "dozens" of proffer sessions that Mr. Fellus attended without mentioning the fact that Mr. O'Connell was allegedly the author of Fellus's misstatements to the NASD. It is well-settled in the Second Circuit that "[u]nder certain circumstances, a witness's prior silence regarding critical facts may constitute a prior inconsistent statement where 'failure to mention those matters. . . conflict[s] with that which is later recalled.'" Strother, 49 F.3d at 874 (quoting Leonardi, 623 F.2d at 756); see also United States v. Carr, 584 F.2d 612, 618 (2d Cir. 1978). In Carr, the Second Circuit held that a witness's 19-month period of silence before offering exculpatory testimony at trial was admissible under Rule 613 as a prior inconsistent statement, noting that "although an objection to [the witness's] silence during the five or six months prior to dismissal of charges against him may have been upheld on the ground that it was not inconsistent with his willingness to testify at trial, it was not error under the circumstances to admit his silence thereafter as possibly inconsistent therewith and therefore relevant to his credibility." Id. Although the statement following the period of silence in this case is inculpatory rather than exculpatory, the same reasoning applies. Mr. Fellus's sudden recollection regarding Mr. O'Connell's involvement in his false statements is not a "belatedly recollected fact[ that] merely augment[s] that which was originally described. . . ."). Leonardi, 623 F.2d at 756. Mr. O'Connell may therefore elicit testimony on this point during Inspector Sharma's cross-examination, for the purpose of impeaching Mr. Fellus's credibility and recollection.

# CONCLUSION

For the reasons stated above, the government's motion in limine is GRANTED in part and DENIED in part. Cross-examination of Inspector Sharma is to proceed in a manner consistent with this order.

SO ORDERED.

Dated:   Brooklyn, New York
         April 24, 2007

_____/s/_____
I. Leo Glasser
United States Senior District Judge

Copies of the foregoing order were electronically sent to:

**Counsel for the Government**

Michael Anthony Asaro, Esq.
Sean Patrick Casey, Esq.
Eric Ross Komitee, Esq.

Assistant United States Attorneys for the Eastern District of New York
156 Pierrepont Street, 6th Floor
Brooklyn, NY 11201

**Counsel for the Defendants**

For Kenneth E. Mahaffy, Jr.:

David Bernfeld, Esq.
600 Third Ave.
New York, NY

Stephen P. Scaring, Esq.
Stephen P. Scaring, P.C.
666 Old Country Road, Suite 501
Garden City, NY 11530

For Timothy J. O'Connell:

Mildred M. Whalen , Esq.
Federal Defenders of New York, Inc.
16 Court Street
Brooklyn, NY 11201-4859

For David G. Ghysels, Jr.:

Jeffrey C. Hoffman, Esq.
Hoffman Pollok LLP
260 Madison Avenue
22nd Floor
New York, NY 10016

For Robert F. Malin:

Roland G. Riopelle, Esq.
Sercarz & Riopelle LLP
152 West 57th Street
24th Floor
New York, NY 10019

For Linus N. Nwaigwe:

Donna R. Newman, Esq.
121 West 27th Street
Suite 1103
New York, NY 10001

Peter E. Quijano, Esq.
381 Park Avenue South
Suite 701
New York, NY 10016

For Michael A. Picone:

J. Bruce Maffeo, Esq.
Meyer Suozzi English & Klein P.C.
1350 Broadway
POB 822
New York, NY 10018

Elizabeth Nicole Warin, Esq.
Law Office of Bruce Maffeo
233 Broadway
Suite 2701
New York, NY 10279

For Keevin H. Leonard:

Thomas F.X. Dunn, Esq.
7 Dey Street
Suite 1101
New York, NY 10007