

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 3, 2010

**By ECF**

The Honorable I. Leo Glasser
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  United States v. Ralph Casbarro
>       Cr. No. 05-613 (ILG)

Dear Judge Glasser:

The government respectfully submits this letter in anticipation of the defendant's sentencing.

I.   Facts

As set forth in the Presentence Investigation Report ("PSR"), the defendant was a stockbroker at Smith Barney, a major investment firm.  While at Smith Barney, the defendant had access to an internal communications system known as a "Squawk Box" or a "hoot."  The Squawk Box conveyed, among other things, information about which stocks Smith Barney clients wished to buy or sell.  Stockbrokers like the defendant were supposed to use this order flow information to locate trading partners for the Smith Barney clients.  Instead, the defendant allowed day-traders employed at a firm known as A.B. Watley ("Watley") to listen to the Squawk Box information, in real time, and misuse it to front-run Smith Barney's clients' orders.  The defendant accomplished this by placing his telephone next to the Squawk Box for lengthy periods of time while day-traders listened.

In exchange for providing access to the Squawk Box, the defendant was compensated by commissions he earned on trades placed by Watley.  The defendant also received cash bribes from Watley CEO John Amore.

II.  <u>Application Of the Sentencing Guidelines</u>

        The government objects to the Sentencing Guidelines calculation in the PSR insofar as it (1) fails to assess any enhancement for loss; (2) fails to assess an enhancement due to the offense's involving more than 10 victims, in accordance with § 2B1.1(b)(1)(J); and (3) assesses only a two-point enhancement for abuse of a position of trust, in accordance with § 3B1.3, instead of a four-point enhancement based upon the defendant's status as a registered stockbroker, in accordance with § 2B1.1(b)(16)(A)(ii).

        A.    <u>Adjustment For Loss</u>

        In a brief to Judge Gleeson dated November 4, 2009, the government argued that the loss attributable to all defendants exceeds $2.5 million.  Because the actual loss was too difficult to calculate (<u>see</u> Application Note (3)(B) to Section 2B1.1 of the Sentencing Guidelines), the government's proposed loss amount was based on the gain that inured to all of the defendants from the scheme.  This gain consisted of three components: (1) the commissions the Watley day traders paid Watley for their frontrunning trades; (2) the desk fees the day traders paid to Watley; and (3) the commissions that Watley paid the Broker Defendants to compensate the Broker Defendants for access to their squawk boxes.  This calculation would result in an 18 level increase in Casbarro's adjusted offense level.

        While agreeing with the government that there was a loss and that that loss was impossible to calculate, Judge Gleeson rejected the government's argument that the best measure of that loss should include the commissions and desk fees the Watley day traders paid to Watley.  <u>See</u> <u>12/3/2009 Sentencing Transcript</u> ("<u>Sent. Tr.</u>) at 14 - 15.  The primary reason for Judge Gleeson's ruling was that the government's analysis did not sufficiently focus on the individuals being sentenced.  <u>Id</u>. at 15.  Judge Gleeson also ruled that the commissions and desk fees paid by Watley day traders were, among other things, "too remote from the offense of conviction property to be considered as gain."  <u>Id</u>. at 15 - 16.  Rather, Judge Gleeson ruled, the gain for Guidelines purposes should be the gross commissions paid by Watley to the Brokerage Firms during the period that each individual stockbroker defendant permitted Watley to listen to their squawk box.

For Casbarro, this amount would be $71,150.  GX 483. This results in an eight level increase to Casbarro's adjusted offense level.[1]

B.   Adjustment For More Than 10 Victims

Casbarro should be assessed a two point enhancement pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i) because the offense involved ten or more victims.  Government Exhibits 2 - 6, which were admitted at the 2007 trial, show 601 examples of frontrunning at Watley and the profits derived therefrom.  There is no serious dispute that the defendants' conduct harmed at least ten clients of the Brokerage Firms.

C.   Adjustment Based On The
     Defendant's Status As A Stockbroker

There is also no dispute that the defendant was a registered stockbroker at the time of the offense, and that his status as a stockbroker enabled the commission of this crime. Thus, the defendant should be assessed a four-point enhancement pursuant to § 2B1.1(b)(16)(A)(ii).  This four-point enhancement supersedes the two-point enhancement currently assessed in the PSR pursuant to § 3B1.3.  (Application Note 14(C) to U.S.S.G. § 2B1.1).

D.   The Court's Previous Sentencing
     Of Defendant Timothy O'Connell

Previously, this Court sentenced defendant Timothy O'Connell to one year plus one day incarceration for his conviction for witness tampering (18 U.S.C. § 1512) and making a false statement (18 U.S.C. § 1001).  Defendant O'Connell was a stockbroker whose conduct during the conspiracy period was similar to Casbarro's (except that Casbarro did not tamper with any witnesses or make false statements).  At O'Connell's sentencing, this Court concluded that his crime caused no loss, and declined to enhance O'Connell's Sentencing Guidelines Range accordingly.  Although the Court sentenced O'Connell only for witness tampering and making false statements, the underlying

---

[1]   Casbarro should also be held accountable for the cash bribes he took from Amore.  However, the government does not seek to include this amount for loss purposes because the government is confident that the sum will not exceed the $48,850 necessary to increase Casbarro's Sentencing Guidelines level by an additional two points.

securities fraud conspiracy of which both O'Connell and Casbarro were convicted was considered relevant conduct for purposes of O'Connell's sentencing.

III. <u>Conclusion</u>

If the Court adopts the Sentencing Guidelines calculation advocated by the government before Judge Gleeson, Casbarro's adjusted offense level would be 28.  If the Court adopts Judge Gleeson's analysis, Casbarro's adjusted offense level would be 18.  Lastly, if the Court concludes that the defendant's conduct caused no loss, Casbarro's adjusted offense level would be 10.  These adjusted offense levels do not take into account the substantial assistance Casbarro provided to the government, as set forth in the government's separately filed motion pursuant to U.S.S.G. § 5K1.1.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:  _____/s/_____

James McMahon
Jonathan E. Green
Assistant U.S. Attorneys
(718) 254-6297

cc: Lawrence Iason, Esq.
    Attorney for Defendant Ralph Casbarro

4